

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**FILED**
1/8/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

for the

NORTHERN District of ILLINOIS

CIVIL Division

Don Antione Jones,

_____

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

UHAUL INT, SHAWN WALLACE, BRENDA
OLSON, KEVIN BARRINGER, ARRON
FREEMAN, BRUCA AND LUCY AVEEN-WEST,
AL ANDERSON, MARK JELLISON

_____

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

1:24-cv-13237
Judge LaShonda A. Hunt
Magistrate Judge Jeannice W. Appenteng
RANDOM / Cat. 2

Jury Trial: *(check one)* ☒ Yes ☐ No



**RECEIVED**

DEC 26 2024

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | DON A. JONES |
| Street Address | 9310 S. TURNER AVE |
| City and County | EVERGREEN PARK, COOK COUNTY |
| State and Zip Code | ILLIONIS |
| Telephone Number | 217-720-3359 |
| E-mail Address | DONJONES1170@GMAIL.COM |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | UHAUL INTERNATIONAL |
| Job or Title *(if known)* | |
| Street Address | 2727 N. CENTRAL AVE |
| City and County | PHOENIX,  MARICOPA COUNTY |
| State and Zip Code | ARIZONA |
| Telephone Number | 623-738-1242 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | SHAWN WALLACE, ARRON FREEMAN, KEVIN BARRING |
| Job or Title *(if known)* | |
| Street Address | 3250 E. CLEARLAKE AVE |
| City and County | SPRINGFIELD,  SANGAMON COUNTY |
| State and Zip Code | ILLIONIS |
| Telephone Number | (S) 217-622-0441, (A) 217-622-2831, (K) 217-361-5201 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | BRUCE AND LUCY AVEEN-WEST |
| Job or Title *(if known)* | |
| Street Address | 3401 COON RAPIDS BLVD |
| City and County | COON RAPIDS,  ANOKA COUNTY |
| State and Zip Code | MINNESOTA |
| Telephone Number | 763-360-6884 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | AL ANDERSON AND MARK JELLISON |
| Job or Title *(if known)* | |
| Street Address | 3401 COON RAPIDS BLVD |
| City and County | COON RAPIDS,  ANOKA COUNTY |
| State and Zip Code | MINNESOTA |
| Telephone Number | |
| E-mail Address *(if known)* | |

C. **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | UHAUL SHOP 268000 SPRINGFIELD, IL AND UHAUL SHOP COON RAPIDS MN |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

II. **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒  Other federal law *(specify the federal law)*:
NEGLIGENCE LEADING TO PERSONAL INJURY, COPY RIGHT INFRINGMENT; CROSS-STATE RETALIATION

☒  Relevant state law *(specify, if known)*:

☐  Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

III.  **Statement of Claim**

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.  The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☒ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☐ Other acts *(specify)*:  NEGLIGENCE LEADING TO PERSONAL INJURY, COPY RIGHT INFRINGMENT; CROSS-STATE RETALIATION

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.  It is my best recollection that the alleged discriminatory acts occurred on date(s)
SEE EXHIBT A. EEOC FILED COMPLAINT #444-2023-02466

C.  I believe that defendant(s) *(check one)*:

- ☒ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race _____
- ☒ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*
  _____

E.  The facts of my case are as follows.  Attach additional pages if needed.

SEE EXHIBIT B. SUBMITTED TO EEOC #444-2023-02466

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

2/21/2024

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on *(date)*    10/10/2024    .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Don Antione Jones,
9310 S. Turner Ave,
Evergreen Park, IL 60805,
Plaintiff,

v.


U-HAUL INTERNATIONAL
2727 N Central Ave
Phoenix, Arizona 85004
Defendant

Shawn Wallace,
3250 E. Clearlake Ave,
Springfield, IL 62703,
Defendant,

Breanda Olson,
3250 E. Clearlake Ave,
Springfield, IL 62703,
Defendant,

Kevin Barringer,
3250 E. Clearlake Ave,
Springfield, IL 62703,
Defendant,

Arron Freeman,
3250 E. Clearlake Ave,
Springfield, IL 62703,
Defendant,

Bruce Aveen-West,
3401 Coon Rapids Blvd,
Coon Rapids, MN 55433,
Defendant,

1

Lucy Aveen-West,
3401 Coon Rapids Blvd,
Coon Rapids, MN 55433,
Defendant,

Al Anderson,
3401 Coon Rapids Blvd,
Coon Rapids, MN 55433,
Defendant,

Mark Jellison,
3401 Coon Rapids Blvd,
Coon Rapids, MN 55433,
Defendant.

**JURY DEMAND ENDORSED HEREIN**

**COMPLAINT FOR DAMAGES FOR RACIAL DISCRIMINATION, HARASSMENT AND HOSTILE WORK ENVIRONMENT, WRONGFUL TERMINATION, CROSS-STATE RETALIATION, NEGLIGENCE LEADING TO PERSONAL INJURY, AND COPYRIGHT INFRINGEMENT**

## I. INTRODUCTION

1. Don Antione Jones, a dedicated and long-serving employee of U-Haul International, stands before this Court wronged and seeks justice. After years of committed service, including enhancing company operations through his innovative YouTube tutorials (***Don Jones U-Haul***), Mr. Jones was subjected to racial discrimination, harassment, and, wrongful termination, across state retaliation, copyright infringement and negligence leading to personal injury. His ordeal began not from any fault of his own, but from his simple act of reporting a severe car accident while on company premises that should have elicited support rather than retribution.

2. U-Haul International, despite being aware of the racial tensions and the precarious environment fostered at their facilities, repeatedly failed to act just as well even after Mr. Jones followed the chain of command by reporting racial comments made to him. Instead, they perpetuated a culture of negligence and discrimination.

3. . Mr. Jones's superiors, fully cognizant of his accident and the subsequent racial abuse he endured, chose to demote him and reduce his pay, exacerbating an already hostile work environment. This lawsuit seeks to hold U-Haul accountable for their continuous disregard for the welfare and rights of their employees, and to compensate Mr. Jones for the damage he has suffered due to their repeated and reprehensible misconduct.

## II. JURISDICTION

1. Subject Matter Jurisdiction: This Court has subject matter jurisdiction over the present matter pursuant to *28 U.S.C§ 1331 and 2671-2680* as the claims raised in this complaint involve questions of federal law. Additionally, jurisdiction is supported by *28 U.S.C. § 1332*, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states and under *45 U.S.C. 51 et seq.*

2. Personal Jurisdiction: This Court has personal jurisdiction over the parties in this case as the defendant(s) have conducted business within the State of Illinois and have established minimum contacts with the state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. Furthermore, the events giving rise to the claims occurred within this jurisdiction, thereby establishing sufficient ties to this forum to support the exercise of personal jurisdiction.

## III. PARTIES

**Plaintiff:** Don Antione Jones, an individual, domiciled in the State of Illinois, with a residence address at 9310 S. Turner Ave, Evergreen Park, Illinois 60805.

**Defendants:**

A. **Shawn Wallace**, an individual, domiciled in the State of Illinois, with a business address at 3250 E. Clearlake Ave, Springfield, Illinois 62703.

B. **Breanda Olson,** an individual, domiciled in the State of Illinois, with a business address at 3250 E. Clearlake Ave, Springfield, Illinois 62703.

C. **Kevin Barringer,** an individual, domiciled in the State of Illinois, with a business address at 3250 E. Clearlake Ave, Springfield, Illinois 62703.

D. **Arron Freeman,** an individual, domiciled in the State of Illinois, with a business address at 3250 E. Clearlake Ave, Springfield, Illinois 62703.

E. **Bruce Aveen-West,** an individual, domiciled in the State of Minnesota, with a business address at 3401 Coon Rapids Blvd, Coon Rapids, Minnesota 55433.

F. **Lucy Aveen-West,** an individual, domiciled in the State of Minnesota, with a business address at 3401 Coon Rapids Blvd, Coon Rapids, Minnesota 55433.

G. **Al Anderson,** an individual, domiciled in the State of Minnesota, with a business address at 3401 Coon Rapids Blvd, Coon Rapids, Minnesota 55433.

H. **Mark Jellison,** an individual, domiciled in the State of Minnesota, with a business address at 3401 Coon Rapids Blvd, Coon Rapids, Minnesota 55433.

I. **U-Haul International**, a corporation, in the state of Arzona, with a business address at 2727N. Central Ave, Phoenix, Arzona 85004

## IV. GENERAL ALLEGATIONS

1. On or around *May 3, 2023*, contrary to the Respondent's claims, Plaintiff Don Jones did not voluntarily abandon his employment. Instead, he was involved in a severe car accident in the parking lot which the vehicle Mr. Jones was a passenger in was T-boned on the passage side of which Mr. Jones had to be extracted from the vehicle by Springfield fire department of U-Haul shop 268000 which the view of the up come intersection was blocked by two 26 feet U-Haul trucks, **(Exhibit B- Springfield police accident report)** which necessitated medical intervention,

2. Plaintiff was medically incapacitated due to the accident and subsequently provided a doctor's note from the Hospital Emergency Room and Orthopedic Center of Illinois to Brenda Olson upon his return to work and Mr. Jones was denied Workmen compensation by U-Haul.

3. On *May 9, 2023*, upon attempting to resume his duties at U-Haul shop 268000, Plaintiff was confronted and verbally accosted by Shawn Wallace, the shop manager, who unjustly demoted him and reduced his pay without valid grounds.

4. During his employment, Plaintiff was subjected to racial harassment by Andrew, a nephew of Shawn Wallace, which was reported but negligently ignored by management, exacerbating the hostile work environment. Mr. Jones texted both **Arron Freeman (Exhibit D-text messages)**

5.

6. and **Kevin Barringer (Exhibit C-text messages)** about that incident and the fact that Shawn took no action, and Mr. Jones also went as far as to call the **U-Haul CEO Joe Shoen** and left him a voice mail.

7. The racial harassment incident occurred in late April or early *May 2023*, where Andrew used a racial slur against Plaintiff. Despite reporting this to Shawn Wallace, no corrective action was taken, as corroborated by multiple eyewitnesses within the shop.

8. Respondent's claims of Plaintiff's voluntary termination of employment are factually incorrect and misleading, as substantiated by the medical documentation and eyewitness accounts confirming Plaintiff's presence and activities up to and including *May 8, 2023*, and beyond.

5

9. After the aforementioned incidents, Plaintiff moved back to Minnesota to a different U-Haul location in Coon Rapids, where he was tasked with training employees on the tire warranty and rebuild programs. This position was initially agreed upon and facilitated by Bruce, the manager of the Coon Rapids location.

10. Bruce wanted Mr. Jones to investigate why and how the shop was losing so much money, after reporting to Bruce my founding Al and Mike state acting and being aggressive and rude to Mr. Jones, because Jones had discovered that a large amount of the lose was due to several shop foremen were making purchases and charging it to the U-Haul shop.

11. Jones, was continuously told by Bruce that people from Jones old shop in Springfield and old manager Shawn Wallace and Kevin Barringer wanted him to fire Jones, which was also said to Mr. Jones the day he was fired from the Coon Rapids shop on June 13th **Exhibit B-1 (EEOC Complaint 444-2023-02466)**

12. Despite Plaintiff's successful integration and improvement initiatives at the Coon Rapids location, his employment was terminated without just cause, following a pattern of retaliatory behavior that began at the Springfield location.

13. Further, Plaintiff's contributions to U-Haul's training and operational protocols were significant, extending to the creation of instructional YouTube videos, titled "Don Jones U-Haul," which were used by the company without proper compensation or acknowledgment of Plaintiff's copyright and continue to be used by U-Haul after Mr. Jones was terminated from the company.

14. The termination and subsequent actions by U-Haul have not only caused significant professional and personal damage, pain and suffering, emotional damage, Plaintiff but also highlight systemic issues of racial discrimination, retaliation, and mismanagement within the company.

15. The actions and inactions of U-Haul have led to continuous suffering, loss of income, and severe distress for Plaintiff, necessitating this legal action to address multiple violations of employment and civil rights laws.

**"Exhaustion of Administrative Remedies"**

**Mr. Jones has filed a charge with the EEOC (file #444-2023-02466) and received a Notice of Right to Sue. On the date of 10/10/2024 as EXHIBIT A1**

6

## V. COUNT ONE: RACIAL DISCRIMINATION

1. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

2. Plaintiff is a member of a protected class under **Title VII of the Civil Rights Act of 1964,** as amended, which prohibits discrimination based on race.

3. Plaintiff was employed by Defendant, which is subject **to Title VII of the Civil Rights Act of 1964,** as amended, because it has more than fifteen employees.

4. During Plaintiff's employment, he was subjected to unwelcome racial harassment by a coworker, specifically being called a derogatory racial term, which is indicative of a racially hostile work environment.

5. Plaintiff reported the racial harassment to his immediate supervisor, Shawn Wallace, but the supervisor failed to take appropriate action to correct the situation and instead, the harasser was allowed to continue working in close proximity to Plaintiff, which Plaintiff also text Arron and Kevin making them aware of the incident and the non-action Shawn took, it should also be noted that Mr. Jones left on voicemail with the U-Haul CEO Joe Shone as well with no response, which allowed the hostile work environment to persist.

6. The failure of Defendant to take appropriate corrective action following Plaintiff's complaints of racial harassment constitutes discrimination on the basis of race.

7. The discriminatory practices by Defendant were intentional.

8. The discriminatory practices by Defendant were willful and in reckless disregard of Plaintiff's federally protected rights.

9. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff suffered and continues to suffer damages including, but not limited to, emotional distress, humiliation, embarrassment, and mental anguish.

10. The plaintiff's suffering of these damages is a direct result of the racial discrimination perpetrated by Defendant.

11. **WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, costs of this action, and reasonable attorney's fees as provided under **Title VII of the Civil Rights Act of 1964,** as amended.

## VI. COUNT TWO: HARASSMENT AND HOSTILE WORK ENVIRONMENT

1. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

2. Under federal law, to establish a claim for harassment and hostile work environment, the plaintiff must show that the work environment was so pervasively or severely hostile that it altered the conditions of employment and created an abusive working atmosphere.

3. Plaintiff alleges that during his employment at U-Haul, he was subjected to severe and pervasive harassment based on his race. Specifically, Plaintiff was called a **_"NIGGER"_** by a coworker, Andrew, who is the nephew of shop manager Shawn Wallace. This incident occurred in a highly charged confrontation in the presence of other employees, creating an intimidating, hostile, and offensive work environment.

4. Plaintiff reported the racial slur and the hostile behavior to the shop manager, Shawn Wallace, expecting corrective action to be taken. However, Shawn Wallace dismissed the complaint, failed to take any disciplinary action against his nephew, and instead instructed Plaintiff to avoid Andrew and focus on his work, thereby implicitly condoning the racial harassment and allowing it to continue.

5. The failure of management to address the reported racial harassment effectively permitted a hostile work environment to persist. This lack of response highlights the employer's negligence in regulating workplace conduct and ensuring a work environment free from racial harassment.

6. Furthermore, Plaintiff experienced additional adverse employment actions that contributed to the hostile work environment. After returning from a medically necessitated absence due to a car accident, Plaintiff was confronted and yelled at by Shawn Wallace for submitting a doctor's note to HR representative Brenda Olson. Subsequently Plaintiff was denied workmen compensation by U-Haul, Plaintiff was demoted, and his pay was reduced without a valid reason, actions

8

that were directly linked to his decision to report the harassment and his medical condition.

7. The cumulative effect of the racial slurs, the lack of corrective action by management, and the retaliatory demotion and pay reduction created an abusive and hostile work environment for the Plaintiff. This environment was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment at U-Haul, thereby fulfilling the legal requirement for a claim of hostile work environment under federal law.

**WHEREFORE,** *Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, costs of this action, and reasonable attorney's fees as provided under applicable federal and state laws 41 CFR § 60-20.8*

## VII. COUNT THREE: WRONGFUL TERMINATION

1. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

2. Plaintiff was an employee of the Defendant under a contract of employment.

3. The plaintiff alleges that his termination was in violation of Illinois and federal employment laws, specifically those protecting employees from termination based on discriminatory practices, retaliation, and other wrongful acts.

4. On or around **May 3, 2023**, Defendant's representative, Shawn Wallace, claimed that Plaintiff voluntarily resigned by stating "I'm done" and walking out. However, the Plaintiff asserts this claim is factually incorrect.

5. The Plaintiff provides factual support indicating that on **May 3, 2023**, he was involved in a severe car accident on company property and was medically incapacitated.

6. The plaintiff was physically unable to attend work and communicated his medical status to Defendant through proper channels, returning only on **May 8, 2023**, with a legitimate medical clearance from the Orthopedic Center of Illinois.

7. Upon his return, Plaintiff was subjected to immediate and unjustified demotion and reduction in pay by Shawn Wallace, as a direct consequence of Plaintiff's submission of medical documentation to Brenda Olson, an act protected under Illinois employment law.

8. Plaintiff's termination was further influenced by racial discrimination and retaliation for reporting racial harassment, as detailed in previous paragraphs regarding incidents involving Shawn Wallace's nephew and the lack of appropriate action following Plaintiff's complaints.

9. The culmination of these discriminatory and retaliatory actions led to Plaintiff's wrongful termination, which occurred under the pretext of operational changes at Defendant's Coon Rapids location but was motivated by the aforementioned unlawful factors.

10. The plaintiff's termination was not for a legitimate business reason but was a result of unlawful factors, including but not limited to racial discrimination, retaliation for engaging in protected activities, and other wrongful acts as outlined above.

11. As a direct and proximate result of the wrongful termination, Plaintiff has suffered and continues to suffer lost wages, benefits, emotional distress, and other compensable damages.

12. **WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, reinstatement or front pay, back pay, costs of this action, and reasonable attorney's fees as provided under applicable federal and state laws.

## VIII. COUNT FOUR: CROSS-STATE RETALIATION

1. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

2. Plaintiff was employed by Defendant, which conducts business across multiple states, including Illinois and Minnesota.

3. Plaintiff engaged in protected activity by reporting racial discrimination and harassment in the workplace to his superiors, specifically incidents involving racially derogatory language and threats used against him by a coworker.

4. Defendant was aware of Plaintiff's protected activities, as evidenced by Plaintiff's direct reports to his manager, Shawn Wallace, and subsequent discussions involving workplace conduct and employment practices.

5. After Plaintiff's reports of racial discrimination and harassment, and while still employed by Defendant, Plaintiff was subjected to adverse employment actions including unjustified demotion, reduction in pay, and eventual termination.

6. The adverse actions began in Illinois, where Plaintiff was demoted and had his pay reduced immediately after returning from medical leave and reporting to Shawn Wallace. These actions continued in Minnesota, where Plaintiff was terminated from his position at the Coon Rapids location under the pretext of organizational adjustments after he had uncovered and reported financial discrepancies detrimental to the financial health of the location.

7. The timing and nature of these adverse actions, closely following Plaintiff's protected activities, and the lack of a legitimate, non-retaliatory reason for such actions, suggest that these were acts of retaliation that were directly related to Plaintiff's complaints of racial discrimination and harassment.

8. The adverse employment actions taken against Plaintiff in both Illinois and Minnesota by Defendant's management constitute a pattern of retaliatory behavior that crosses state lines, affecting Plaintiff's employment status and opportunities.

9. Defendant's actions were intentional, with the purpose of retaliating against Plaintiff for his reports of workplace discrimination and harassment, thereby deterring Plaintiff and potentially other employees from engaging in protected activities.

10. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered significant damages including loss of income, benefits, emotional distress, and damage to professional reputation, which are ongoing.

11

11. Defendant's conduct violates applicable employment and anti-retaliation laws, and Plaintiff is entitled to relief including reinstatement, back pay, compensatory damages, and punitive damages as allowed by law.

12. **WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, front pay, back pay, costs of this action, and reasonable attorney's fees as provided under applicable federal and state laws.

## IX. COUNT FIVE: NEGLIGENCE LEADING TO PERSONAL INJURY

1. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

2. The defendant owed a duty of care to Plaintiff to maintain a safe environment on the premises of U-Haul shop 268000.

3. Defendant breached this duty of care by failing to ensure the safety of the parking lot area of U-Haul shop 268000 by parking two large U-Haul at the corner of the intersection blocking the drivers of both vehicles view causing where Plaintiff was involved in a severe car accident.

4. As a direct and proximate result of Defendant's breach of duty, on May 3, 2023, Plaintiff was involved in a car accident within the premises of U-Haul shop 268000, which necessitated emergency medical intervention. Plaintiff was cut from the **vehicle** and urgently transported to the emergency room, as evidenced by **EXHIBIT B (ILLIONIS TRAFFIC CRASH REPORT)**.

5. The plaintiff suffered actual damages due to this incident, including but not limited to physical injuries, emotional distress, and medical expenses. The plaintiff was treated at Memorial Medical Center.

6. The negligence of Defendant in failing to maintain a safe environment on its property directly caused the injuries and damage sustained by Plaintiff.

7. **WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory damages, costs of this action, and any other relief this Court deems just and proper.

## X. COUNT SIX: COPYRIGHT INFRINGEMENT

1. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

2. Plaintiff is the owner of copyright in the original video content, specifically a series of YouTube videos titled "Don Jones U-Haul," which were created to educate and train individuals on the processes involved in the U-Haul rebuild and tire warranty programs (hereinafter referred to as the "Copyrighted Material").

3. The Copyrighted Material is an original work authored by Plaintiff, Don Jones, and includes unique elements such as methods, techniques, and processes for repairing and maintaining U-Haul equipment, which Plaintiff developed over years of experience.

4. Plaintiff registered the Copyrighted Material with the United States Copyright Office, and such registration is valid and subsisting.

5. Defendant, U-Haul International, without the consent or authorization of Plaintiff, used the Copyrighted Material at U-Haul locations across multiple states, including but not limited to the training of employees at the Coon Rapids location in Minnesota.

6. Defendant's use of the Copyrighted Material includes but is not limited to displaying, distributing, and reproducing the videos for purposes of training and instructing employees, which directly competes with Plaintiff's intended use of the Copyrighted Material for similar training purposes.

7. The unauthorized use of the Copyrighted Material by Defendant has been willful, intentional, and for the direct financial benefit of Defendant, as it reduces the need for Defendant to develop independent training materials and resources.

8. As a direct and proximate result of Defendant's copyright infringement, Plaintiff has suffered, and continues to suffer, substantial damages in an amount to be proven at trial, including but not limited to lost opportunities, lost profits, and diminished value of the Copyrighted Material.

9. The plaintiff has made repeated demands to Defendant to cease and resist its infringing activities; however, Defendant has failed to comply with these demands, thereby necessitating the filing of this action.

10. **WHEREFORE,** the Plaintiff demands judgment against Defendant for actual damages, statutory damages, attorney's fees, costs of this action, and any other relief this Court deems just and proper under the Copyright Act.

## XI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Don Antione Jones, respectfully requests that this Court:

A. Grant judgment in favor of Plaintiff on all claims, specifically for Racial Discrimination, Harassment and Hostile Work Environment, Wrongful Termination, Cross-State Retaliation, Negligence Leading to Personal Injury, and Copyright Infringement.

B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto, particularly concerning the unauthorized use of Plaintiff's copyrighted YouTube videos.

C. Enjoin Defendant from further unauthorized use of Plaintiff's copyrighted material and from engaging in any further acts of discrimination, harassment, or retaliation against Plaintiff.

D. Award Plaintiff actual damages for the unauthorized use of his YouTube videos, in addition to compensation for emotional distress, lost wages, and benefits, in an amount to be determined at trial, but no less than **$10,000,000.**

E. Grant Plaintiff the maximum economic, non-economic, actual, statutory, emotional, general, punitive, and other damages available under the law.

F. Award Plaintiff attorney fees, with the appropriate multiplier, plus costs and expenses of this litigation.

G. Award such other and further relief as the Court deems just and proper.

**JURY DEMAND**

DON ANTIONE JONES HEREBY DEMANDS A JURY ON ALL TRIABLE
MATTERS.

Respectfully submitted,

Don Antione Jones
Plaintiff, Pro Se
9310 S. Turner Ave
Evergreen Park, IL 60805

Dated: 12/22/2024

15

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

SEE RELIEF ATTACHMENT

_____

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: *12/22/2024*

Signature of Plaintiff _____

Printed Name of Plaintiff *Don Antione Jones*

### B. For Attorneys

Date of signing: _____

Signature of Attorney _____

Printed Name of Attorney _____

Bar Number _____

Name of Law Firm _____

Street Address _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____

*Exhibit A-1*

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Minneapolis Area Office**
330 South Second Avenue, Suite 720
Minneapolis, MN 55401
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)
Issued On: 10/10/2024

**To:** Mr. Don Jones
9310 S. Turner
Evergreen Park, IL 60805

Re: Charge No: 444-2023-02466
EEOC Representative and email:    David Noyes
Investigator
david.noyes@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 444-2023-02466.

On behalf of the Commission,

Digitally Signed By: Cherie Doak
10/10/2024
Cherie Doak
Area Office Director

**Cc: U-Haul International Inc**
c/o Lamar Saffold
Workplace Solutions Specialist
2727 N. Central Avenue,
P.O. Box 21502
Phoenix, AZ 85036

Please retain this notice for your records.

EXhibit B-2

May 4, 2024

EEOC# 444-2023-02466

Complainant: Don Jones

Respondent: U-Haul International

Mr. Saffold stated that in Information section of the submitted respondents is very inaccurate for several reasons being i have exhibits and eyewitness from both the Springfield, Illinois and Coon Rapids U-Haul shop locations

**The respondent: Claim that on or around May 3, 2023, Shawn Wallace, spoke with Don about his attendance, Don because upset with Shawn and said, I'm done and walked out of the location in the middle of the conversation.**

DJ: This statement is very untrue because i was still working for shop 268000 but was in a car accident with my then girlfriend Dana Driver on 5/3/23 as shown in **EXHIBIT A** *(Accident Information Exchange)* where i was cut from the vehicle and transported to the ER from that U-Haul shop 268000 location parking lot **EXHIBIT A-1** *(PICTURE OF THE VEHICE I WAS IN AT THE TIME OF THEN ACCIDENT WITH MS. DRIVER SHOWN IN FRONT THE UHAUL BUILDING)*. I wasn't able to come back to work until 5/8/23 **EXHIBIT B** *(LETTER FOR ORTHOPEDIC CENTER OF ILLINOIS)* the i sent to Brenda Olson when came back to work, because told Dana driver and myself as we both were still in the wrecked car, to make sure that we bring all hospital paper to her, so she could send them to U-Haul home office in AZ, to see if she could get dana and me workman Comp, seeing the accident was on company property. On 5/9/23 i returned to work at shop 268000, but not before stopping at **Brenda Olson (217-971-6034)** off *(which is on the same property as the shop)* my doctors note. I dropped the letter to Brenda and was walking across the parking lot to the shop to report for work and Shawn

Wallace *( 268000 shop manager)* came out and started yelling at me for taking or giving Brenda my doctor's note. Shawn yelled for me the follow him to his office and i walked in and he starting getting louder and told me that i was being demoted to the trailer line and my paid was being down as well, and at that point i did say I'm done because i didn't feel i should've been treated like that after 4 years of service with and for Shawn and U-Haul l as a whole.

FOR THE RESPONSES, to claim that i walked off about or on May 3, 2023, is completely fact and i was seen at the Memorial medical center on May 5, 2023, and wasn't done back at work until May 8, 2023, *EXHIBIT B-1 (WORK RELEASE FORM)*. My leaving the U-Haul shop didn't come until the day of May 8, 2023. And the text that i sent to Kevin Barringer about me not losing my job was a different issue and was from months earlier and not in May of 2023,

**RESPONSDENT: During my employment, i was subjected to racial harassment by a coworker. I reported the harassment, but nothing was done.**

**DJ:** This incident happened in the beginning of or in the month of April or May of 2023 with Shawn Wallace's nephew (Kevin) that Shawn had hired to work directly with me in the tire bay/rebuild department as to help me out with installing, mounting and balancing of truck tires and van etc. Because he wanted me to just focus on the rebuild program and tire warranty program. The incident happened when I was on the forklift moving tire pallets and one of the shop line worker came in for 4 tires and Kevin was already mounting tires for a van, as him being the tire bay worker he needed to stop what he was working on at that time and get the tires for the trucks done first, and he look at me and said that i can do the truck tires, because he was still working in the van tires. I told him that what comes up in the truck line always comes first and it wasn't my job anymore, and that he needed to get it done asap because the truck was waiting. He said fuck up and u worry about what the fuck you are doing, so came down from the forklift and walked to the tire machine and

asked what did he say and he then say to me **"NIGGER I'LL BEAT YOUR ASS IN HERE"** and at that time he was directly in front of me when he said that. I turned around and went to let Shawn Wallace know what his nephew had just said to me, and he stood there for a second and asked me where his nephew was located and i said he was in the tire bay. And I turned away from Shawn and was walking to the door outside for some air to calm down, because i was very upset and a lot of the other people in the shop heard me and him yelling and everyone from asking me what Shawns nephew had said to me to make me so upset. After about 15 minutes outside in came back into the shop and Shawn told me to come in his office, Shawn, Lester (Shop Foreman) Myself and Shawn's Nephew all sitting in chairs. Shawn was sitting across from me; Lester was sitting to my left and Shawn's nephew was to his right. The first think Shawn said was "Why are you worried about what Kevin is doing in the tire bay because you need to focus on the warranty tires and rebuild program and not what he is doing. I had run the whole tire bay and rebuild program and tire warranty program for 4 year by myself with little to no help, so naturally all the repair lanes worker are going to come me, if Kevin not in the tire bay which is the reason i said something to him, about getting the truck lane tire done front, but 60% of the day your nephew is nowhere to be found or on his phone. Shawn i have told you several times that he is not working out back there with me because he doesn't work, just walks around on the phone or is in the restroom for some time an hour 3 or 4 times a day. So, Shawn said that you focus on rebuilding, and he will stay away from you. I looked at him and said that's all we are talking about? What about him calling a NIGGER to my face. **Shawns response was his nephew said that he didn't say that, and I wasn't there and i believe he didn't say that you two need to just in away from each other and do your own work**. So, i said to Shawn really this all you are going to say and do? So, walked out of his office and went back to my department and then a minute or 5 later Kevin came over to my workstation and said that he was going to be out of there in a couple days. So, after work i text and tried calling **Kevin Barringer (Marketing Company President at his phone number) EXHIBIT C (217-361-5201) that same day of the incident**

*and got be not reply or response of any kind and i also call and texted him boss Arron Foreman EXHIBIT C2 (217-622-2831) forwarding him the text i sent to Kevin (MCP) with no reply or response from him either.*

**RESPONSENT: I was given verbal threats of being demoted and denied pay.**

**DJ:** I have never reported to the EEOC, that i was not getting paid or anyone in company of U haul, so there no names to report for that sentence and second SHAWN WALLACE (SPRINGFIELD , ILL) himself said that he was demoting me to trailer line and dropping my pay, but providing names and number of people whom was in the shop at the time this whole incident was started and im very sure the whole shop heard Shawn and I or cause them to be fired or demoted for helping in these investigations. U-Haul is mainly an employee-owned company and this I because I received free stock shares for years of being with U-Haul and the Coon Rapids location never held my pay either.

**RESPONSEDENT: Thereafter, I applied and was transferred to a different location, but without warning, I was fired.**

**DJ:** I worked for this company long enough to know in the enter working of the transfer and firing system of U-Haul, so i would never made think. Bruce or nor did I believe that i was being transferred, in fact i had talk to Bruce a number of times months before my leave the Springfield shop on the phone on hoe and did he need to do in order to start and help his shop tire bay team with the Michelin Tire Warranty program and the U-Haul rebuild program, which at that time I was probably the ONLY rebuild specialist in the company. Shops around the county start seeing what *268000 (Springfield Shop Number)* the money or credits be returned to shop 268000 to point that i would get phones from all over. So, i needed to have a way to train shops to

do what i was doing so I had to make (5 *YouTube videos- Don Jones U-Haul) explaining* and teaching

How the program and process work. Bruce even wanted me to come up to Minnesota to the Coon Rapid shop to train the tire bay team on the process of correctly processing warranty tires and rebuilding of truck and trailer parts which was also was what my YouTube channel was all about. So, a few days after my leaving shop 268000 I called Bruce at the Coon Rapid shop and told him that i was moving back to Minnesota really soon and would like to come work for him and train his tire bay team to be rebuild specialist which agreed and was very happy to hear I would be coming up there to work and train his employees. Before I left Springfield Bruce and I texted back and forth *( May 15, 2023 –May 20, 2023) EXHIBIT D (TEXT MESSAGES TO AND FROM BRUCE AND ME ABOUT TRAINING HIS PEOPLE)* to let him that the training would be hard and not fast the learn, because it took me 4 years to master the rebuild specialist position. The first day i arrived at the Coon Rapid Bruce and i sat down and talk about what and how i would be changing things and moving things around, and i told him that his people will be really pissed in the beginning of the change but in the long run he will happy of the outcome, because Bruce said that the shop was losing *$500 to $750,000* in the last two years and he needed to start putting money back into the shop, and he wanted me the first day at the shop he wanted me to not let everyone know what i was there for (which to train his tire bay employee and pre inspector on using the rebuild program) but the walk around and tell him what his people were doing wrong and what i would need to do to get things right for the shop. After my evaluation of the tires bay area and rebuild program process of the tire bay teams, i report to Bruce all the thing i seen that was not up to par and needed to change and can be fixed for what he would need for the shop to save money, he directly told me to do what i needed to, but i will meet resistant's from employee who had worked for the shop for many, many years some of which had work at the shop for 10 years or longer, but he also said that if they wanted to leave then so be it, he was fine with that. One think i need to mention it that 90% of the team members are related, in relationships

with other employee and husbands and wife, which also includes Bruce, his wife is also his *MCP (Marketing Company President/ Lucy Aveen-West)*. The first week I was there I asked Bruce if i cause start changing around the tire bay area, to maximize the space for the rebuilt parts and making room for more tires. The team I was train very resisted to the change and would report all there complains to the shop foreman *(Al Anderson)* technical foreman *(Mark Jellison)*. Bruce was more worried about losing team members that had been at that shop years before he ever became the shop manager, he has told me a number of times that people were going to quit if i continued working there, then he would keep telling that manager and higher up people from Springfield think that he needed to end my employment at his shop. So, at my termination meeting with *(Al Anderson, Mark Jellison and John Musokwa who of which is the only black person there and did know what was happening)*. During the meeting once again that people from Springfield said that he needed to get fired from Coon Rapids shop and that if i stayed people would start quitting.

**CONCLUSION:**

*Shawn Wallace was very upset and demoted me and cut my pay due to my going to Branda Olson with my Doctor letter after the car crash on company property. Shawn Wallace never fired or sent his nephew home after the meeting, about making the racial comment, but just told us both to go back to work and stay away from each other. Bruce knew very what i was coming to do at his shop and was 100% on broad until i started finding out why his shop was losing so much money, because of very high level wrong doing and buying tires, equipment etc., that was being charge to his shop which was all uncovered by not just myself but, with help of the Coon Rapids Shop Parts Foreman (Holly Spike 612-386-5001) and office Clerk she handles all account receivable (Erica Pelletier 763-238-6384) these two and myself uncovered a large number of fraud from higher up at the Coon Rapids Shop and once again every black person*

*that works at that Coon Rapids shop last 3 weeks to 4 months before*
*someone finds a reason to fired them by complaining about him.*

+ EXHIBIT - B

# ILLINOIS TRAFFIC CRASH REPORT
## SR 1050 (JAN. 2019)
Printed by the authority of the State of Illinois

**SPRINGFIELD POLICE DEPARTMENT**

INVESTIGATING AGENCY

**ADDRESS NO.** 3250

*P0114*

AGENCY CRASH REPORT NO. X00306758

SECONDARY CRASH S23-31243

### UNIT 1
- NAME (LAST, FIRST, M) BERRY, KIETHON
- STREET ADDRESS 1816 E PINK
- CITY SPRINGFIELD STATE IL ZIP 62703
- MAKE CHEVROLET MODEL CAPRICE YEAR 1994
- PLATE NO. BW65747 STATE IL YEAR 2022
- VIN 1G1BL52P5RR176950
- DATE OF BIRTH 10/12/1995
- DRIVER'S LICENSE NO. B608-1049-5291
- INSURANCE CO. AMERICAN ALLIANCE
- POLICY NUMBER IIAA-0774374-00

### UNIT 2
- NAME (LAST, FIRST, M) BERRY, CHRISTOPHER D
- STREET ADDRESS 2100 S 14TH ST
- CITY SPRINGFIELD STATE IL ZIP 62703
- MAKE ACURA MODEL TSX YEAR 2009
- PLATE NO. DY24316 STATE IL YEAR 2023
- VIN JH4CU26629C031673
- OWNER STREET, CITY, STATE, ZIP 815 E ELM ST TAYLORVILLE IL 62568
- DATE OF BIRTH 11/06/1985
- DRIVER'S LICENSE NO. B818-1738-5916
- INSURANCE CO. AMERICA
- POLICY NUMBER 38708829-ILL-PP-001
- PHONE NUMBER 2178207941

HOSPITAL MEMORIAL MEDICAL CENTER

**REMEMBER TO USE BLACK INK, PRESS HARD, PRINT LEGIBLY AND COMPLETE ALL REQUIRED FIELDS!**

* IF YES TO COM VEH, COMPLETE LARGE TRUCK, BUS, OR HM

EXHIBIT B

# LARGE TRUCK, BUS, OR HM VEHICLE

IF MORE THAN ONE CMV IS INVOLVED, USE SR 1050A
ADDITIONAL UNITS FORMS.

A CMV is defined as any motor vehicle used to transport passengers or property and:

1. Has a weight rating more than 10,000 pounds (example: truck or truck/trailer combination); or

2. Is used or designed to transport more than 15 passengers including the driver (example: shuttle or charter bus); or

3. Is designed to carry 15 or fewer passengers and operated by a contract carrier transporting employees in the course of their employment (example: employee transporter - usually a van type vehicle or passenger car); or

4. Is used or designated to transport between 9 and 15 passengers, including the driver, for direct compensation (example: large van used for specific purpose); or

5. Is any vehicle used to transport any hazardous material (HAZMAT) that requires placarding (example: placards will be displayed on the vehicle).

**A Diagram and Narrative are required on all Type B crashes, even if units have been moved prior to officer's arrival.**

INDICATE NORTH BY ARROW

○

NARRATIVE (refer to vehicle by unit #):
UNIT 1 WAS TRAVELING EASTBOUND IN THE PARKING LOT OF UHAUL. UNIT 2 WAS TRAVELING SOUTH IN THE SAME PARKING LOT. A PARKED FULL SIZE RENTAL TRUCK WAS BLOCKING THE VIEW OF BOTH UNITS. THE UNITS CONTINUED STRAIGHT AHEAD. UNIT 1 STRUCK UNIT 2 IN THE PASSENGER SIDE FRONT DOOR. DRIVER OF UNIT 2 COMPLAINED OF LEFT LEG PAIN. THE PASSENGER OF UNIT 2 COMPLAINED OF PAIN IN HIS RIGHT SIDE. THE PASSENGER WAS TRANSPORTED TO MEMORIAL MEDICAL. THE DRIVER OF UNIT 2 REFUSED TREATMENT ON SCENE. THE DRIVER OF UNIT 1 WAS NOT INJURED. THE FRONT SEAT PASSENGER COMPLAINED OF ANKLE PAIN BUT WOULD FOLLOW UP ON HIS OWN. NEITHER DRIVER REQUESTED A TOW TRUCK FROM US. THEY STATED THAT THEY WOULD REMOVE THE VEHICLES ON THEIR OWN.

| | CMV UNIT | |
|---|---|---|
| | CARRIER NAME | |
| | ADDRESS | |
| | CITY/STATE/ZIP | |
| MOTOR CARR ID | ☐ Interstate | ☐ Intrastate |
| | ☐ Not in Comm./Govt. | ☐ Not in Comm./Other |
| USDOT NO. | | ILCC NO. |

Source of above:
☐ Side of Truck   ☐ Papers   ☐ Driver   ☐ Log Book

GVWR/GCWR
☐ <10,000   ☐ 10,000 - 26,000   ☐ >26,000

Were HAZMAT placards on vehicle?   ☐ Yes   ☐ No
If Yes, Name on placard

4 digit UN NO. _____   1 digit Hazard class No. _____

Did HAZMAT spill from vehicle (do NOT consider FUEL from vehicle's own tank)?   ☐ Yes   ☐ No   ☐ Unknown

Did HAZMAT Regulations violation contribute to the crash?   ☐ Yes   ☐ No   ☐ Unknown

Did Carrier Safety Regulations (MCS) violation contribute to the crash?   ☐ Yes   ☐ No   ☐ Unknown

Was a driver/vehicle Examination Report Form completed?   ☐ Yes   ☐ No

HAZMAT   ☐ Yes   ☐ No   ☐ Unknown  Out of Service   ☐ Yes   ☐ No
MCS   ☐ Yes   ☐ No   ☐ Unknown  Out of Service   ☐ Yes   ☐ No

Form Number _____

IDOT PERMIT NO. _____   WIDELOAD?   ☐ Yes   ☐ No

TRAILER VIN 1 _____
TRAILER VIN 2 _____

| TRAILER WIDTH(S) | 0 - 96" | 97 - 102" | > 102" |
|---|---|---|---|
| TRAILER 1 | ☐ | ☐ | ☐ |
| TRAILER 2 | ☐ | ☐ | ☐ |
| TRAILER LENGTH(S) 1 | ft. | ft. | ft. |
| TRAILER 2 | ft. | ft. | ft. |

TOTAL VEHICLE LENGTH _____ ft.   NO. OF AXLES _____

SELECT CODES FROM THE BACK OF CRASH BOOKLET
VEHICLE CONFIG. _____   CARGO BODY TYPE _____   LOAD TYPE _____

LOCAL USE ONLY

| | U.1 COLOR | SILVER | U.2 COLOR | MAROON | U.1 Drug Tests | U.2 Drug Tests |
|---|---|---|---|---|---|---|
| U.1 COLOR | | | | | 000 | 000 |
| U.2 COLOR | | | | | 000 | 000 |

| | | |
|---|---|---|
| U.1 TOWED DUE TO | ☐ DISABLING DAMAGE | ☐ NOT DISABLING DAMAGE | DAMAGE EXTENT: | TOWED BY/TO: N/A/N/A |
| U.2 TOWED DUE TO | ☐ DISABLING DAMAGE | ☒ NOT DISABLING DAMAGE | DAMAGE EXTENT: | TOWED BY/TO: N/A/N/A |

ANY TRUCK OR BUS OPERATING AS CMV, GOVERNMENT ENTITY, OR RENTAL MAY QUALIFY UNDER THESE DEFINITIONS

1:59 🔵📧💬🅕🅖🅕💬💬💬💬💬💬Ⓜ$⑩🅒💬🖼 *🔵🔇📶🛜.ıll 41%🔋

## Messages 🔍 🖼 | Ⓐ Aaron Fr... 📞 📹 ⋮

| | |
|---|---|
| **Ⓐ Allison** Fri | **Tuesday, May 9, 2023 •** |
| Texting with Alli... | **1:23 PM** |

**Ⓛ Lisa** *Draft*
*You: Play Coi...*

**Ⓐ ALLEN,VIC...** Nov 24
⚠️You: http...

👤 **4 Feet** Oct 18
Texting with ...

**Ⓣ T.O.** Oct 18
Texting with ...

**Ⓢ Shannon U...** Oct 18
Texting with ...

**Kerri D** *Draft*

have sit down and talk with u about today, and I didn't quit and Shawn was very out of line with how and what he said to me today and the incident with his nephew that work with me the "N" word and did nothing about it just telling me

I have heard back from Kevin yet but I'm just giving u a heads up

⊕ 🖼 Text m... ☺ ⑊

# EXHIBIT - D



1:59 *🔋 41%

## Messages 🔍

Aaron Fr... 📞 📹 ⋮

**Allison**       Fri
Texting with Alli...

**Lisa**       *Draft*
*You: Play Coi...*

**ALLEN,VIC...**   Nov 24
ⓘ You: http...

**4 Feet**       Oct 18
Texting with ...

**T.O.**       Oct 18
Texting with ...

**Shannon U...**   Oct 18
Texting with ...

**Kerri D**
*You: Hey! I've...*

> to just be dropped with you or Kevin talking to and asking me what really happened today, in front of everyone in the shop today? Please tell this is how the company I stayed homeless and car less for months but walk to work in the for Aaron.

Text m... ☺



Exhibit D-1



1:58

**Messages** 🔍

**Kevin Ba...** 📞 📹 ⋮

**A** Allison — Fri
Texting with Alli...

**L** Lisa — Draft
*You: Play Coi...*

**A** ALLEN,VIC... — Nov 24
⓵ You: http...

👤 4 Feet — Oct 18
Texting with ...

**T** T.O. — Oct 18
Texting with ...

**S** Shannon U... — Oct 18
Texting with ...

Kerri D
*You: Hey I've...*

Tuesday, May 9, 2023 •
12:24 PM

> Good morning
> Kevin this is Don
> from the shop I
> really need to have
> sit down and talk
> with u about today,
> and I didn't quit and
> Shawn was very out
> of line with how
> and what he said to
> me today and the

Text m... ☺

EXHIBIT - C

1:58       ✷ 🔇 📶 41%

## Messages 🔍 

| | | |
|---|---|---|
| A | **Allison** | Fri |
| | Texting with Alli… | |
| L | **Lisa** | *Draft* |
| | *You: Play Coi…* | |
| A | **ALLEN,VIC…** | Nov 24 |
| | ⊙ You: http… | |
| 👤 | **4 Feet** | Oct 18 |
| | Texting with … | |
| T | **T.O.** | Oct 18 |
| | Texting with … | |
| S | **Shannon U…** | Oct 18 |
| | Texting with … | |
| 💬 | **Kerri D** | |
| | *You: Hey I've* | |

K **Kevin Ba...** 📞 📹 ⋮

> and I didn't quit and Shawn was very out of line  with how and what he said to me today and the incident with his nephew that work with me the "N" word and did nothing about it just telling me to stay away from him and he will do the same.

12:24 PM SMS



⊕ 🖼 Text m... ☺ �🎙

     ||| ⬜ ‹

EXHIBIT - C-1

1:59   M $ @ ⚛ 💬 🖼 ⚙ ⚫ ... 41%

**G Messages** 🔍 👤 | Ⓐ **Aaron Fr...** 📞 📹 ⋮

Ⓐ **Allison**     *Fri*
Texting with Alli...

Ⓛ **Lisa**     *Draft*
*You: Play Coi...*

Ⓐ **ALLEN,VIC...**   Nov 24
ⓘ You: http...

👤 **4 Feet**     Oct 18
Texting with ...

Ⓣ **T.O.**     Oct 18
Texting with ...

Ⓢ **Shannon U...**   Oct 18
Texting with ...

**Kerri D**     *Draft*

> heads up

Tuesday, May 9, 2023 ·
7:32 PM

> So, this is how I get treated for by a company I give 4 years of hard work to just be dropped with you or Kevin talking to and asking me what really happened today, in front of

⊕ 🖼   Text m...   ☺ 🎙

📞 💬 ⚫ ⚙ | 𝐟⁷ Ⓖ   |||   ▢   ‹

*EXHIBIT D-2*

AO 239 (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois ▼

| | |
|---|---|
| DON JONES | ) |
| *Plaintiff/Petitioner* | ) |
| v. | ) Civil Action No. |
| U-UHAUL INT AND ALL NAMED DEFENDENTS | ) |
| *Defendant/Respondent* | ) |
| | ) |

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Long Form)

**Affidavit in Support of the Application**

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested. I declare under penalty of perjury that the information below is true and understand that a false statement may result in a dismissal of my claims.

Signed:

**Instructions**

Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.

Date: 12/26/24

1. For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.

| Income source | Average monthly income amount during the past 12 months | | Income amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Self-employment | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Income from real property *(such as rental income)* | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Interest and dividends | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Gifts | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Alimony | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Child support | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

Case: 1:24-cv-13237 Document #: 13 Filed: 01/08/25 Page 38 of 41 PageID #:132

Page 2 of 5

AO 239 (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

| | | | | |
|---|---|---|---|---|
| Retirement *(such as social security, pensions, annuities, insurance)* | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Disability *(such as social security, insurance payments)* | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Unemployment payments | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Public-assistance *(such as welfare)* | $ 298.00 | $ 0.00 | $ 298.00 | $ 0.00 |
| Other *(specify)*: | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| **Total monthly income:** | $ **298.00** | $ 0.00 | $ **298.00** | $ **0.00** |

2.     List your employment history for the past two years, most recent employer first. *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| U-HAUL INTERNATIONAL | 3250 CLEARLAKE AVE SPRINGFIELD | 2018 TO 2023 | $ 3.04 |
| COPART | MN | 2023 2024 | $ 3.20 |

3.     List your spouse's employment history for the past two years, most recent employer first. *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| N/A | | | $ |
| N/A | | | $ |
| N/A | | | $ |

4.     How much cash do you and your spouse have? $     5.44

    Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Financial institution | Type of account | Amount you have | Amount your spouse has |
|---|---|---|---|
| CHASE | CHECKING | $ 5.44 | $ |
| | | $ | $ |
| | | $ | $ |

If you are a prisoner, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

AO 239 (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

5.  List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.

| Assets owned by you or your spouse | |
|---|---|
| Home *(Value)* | $            0.00 |
| Other real estate *(Value)* | $            0.00 |
| Motor vehicle #1 *(Value)* | $            0.00 |
|     Make and year:  N/A | |
|     Model:            N/A | |
|     Registration #: N/A | |
| Motor vehicle #2 *(Value)* | $            0.00 |
|     Make and year:  N/A | |
|     Model:            N/A | |
|     Registration #: N/A | |
| Other assets *(Value)* | $            0.00 |
| Other assets *(Value)* | $            0.00 |

6.  State every person, business, or organization owing you or your spouse money, and the amount owed.

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| 0 | $            0.00 | $            0.00 |
| 0 | $            0.00 | $            0.00 |
| 0 | $            0.00 | $            0.00 |

7.  State the persons who rely on you or your spouse for support.

| Name (or, if under 18, initials only) | Relationship | Age |
|---|---|---|
| N/A | N/A | |
| N/A | N/A | |
| N/A | N/A | |

AO 239 (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

8.     Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.

| | You | Your spouse |
|---|---|---|
| Rent or home-mortgage payment *(including lot rented for mobile home)*<br>    Are real estate taxes included? ☐ Yes ☐ No<br>    Is property insurance included? ☐ Yes ☐ No | $ 0.00 | $ 0.00 |
| Utilities *(electricity, heating fuel, water, sewer, and telephone)* | $ 0.00 | $ 0.00 |
| Home maintenance *(repairs and upkeep)* | $ 0.00 | $ 0.00 |
| Food | $ 298.00 | $ 0.00 |
| Clothing | $ 0.00 | $ 0.00 |
| Laundry and dry-cleaning | $ 0.00 | $ 0.00 |
| Medical and dental expenses | $ 0.00 | $ 0.00 |
| Transportation *(not including motor vehicle payments)* | $ 0.00 | $ 0.00 |
| Recreation, entertainment, newspapers, magazines, etc. | $ 0.00 | $ 0.00 |
| Insurance *(not deducted from wages or included in mortgage payments)* | | |
|     Homeowner's or renter's: 0 | $ 0.00 | $ 0.00 |
|     Life:     00 | $ 0.00 | $ 0.00 |
|     Health:     0 | $ 0.00 | $ 0.00 |
|     Motor vehicle:     0 | $ 0.00 | $ 0.00 |
|     Other:     0 | $ 0.00 | $ 0.00 |
| Taxes *(not deducted from wages or included in mortgage payments) (specify)*: | $ 0.00 | $ 0.00 |
| Installment payments | | |
|     Motor vehicle:     0 | $ 0.00 | $ 0.00 |
|     Credit card *(name)*:     0 | $ 0.00 | $ 0.00 |
|     Department store *(name)*: 0 | $ 0.00 | $ 0.00 |
|     Other:     0 | $ 0.00 | $ 0.00 |
| Alimony, maintenance, and support paid to others | $ 0.00 | $ 0.00 |

AO 239 (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

| | | |
|---|---|---|
| Regular expenses for operation of business, profession, or farm *(attach detailed statement)* | $ 0.00 | $ 0.00 |
| Other *(specify)*: 0 | $ 0.00 | $ 0.00 |
| **Total monthly expenses:** | $ 298.00 | $ 0.00 |

9. Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?

   ☐ Yes   ☑ No      If yes, describe on an attached sheet.

10. Have you spent — or will you be spending — any money for expenses or attorney fees in conjunction with this lawsuit?   ☐ Yes   ☑ No

    If yes, how much?   $ _____

11. Provide any other information that will help explain why you cannot pay the costs of these proceedings.
    IM ON PUBLIC ASSISSTANCE

12. Identify the city and state of your legal residence.
    EVERGREEN PARK, ILLIONIS

    Your daytime phone number:      (217) 720-3359

    Your age:   54   Your years of schooling: _____

[ Print ]   [ Save As... ]   [ Add Attachment ]            [ Reset ]